JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

ORIGINAL

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

BOSE CORPORATION

**DEFENDANTS**

T3 LINK, INC. and WEB HOSTING ETC

3 04CV1939  R

**(b)** County of Residence of First Listed **Farmingham, MA**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First    **Haven, Florida**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

RECEIVED
SEP - 7 2004
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Matthew E. Yarbrough, Victor C. Johnson, Kelly R. Fish & Richardson P.C. (Dallas)
1717 Main Street, Suite 5000, Dallas, Texas 75201
214-747-5070

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- X 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff

(For Diversity Cases Only)                    and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☒ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | X 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | **SOCIAL SECURITY** | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Standards Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | | ☐ 870 Taxes (U.S. Plaintiff | Determination Under Equal |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | ☐ 790 Other Labor | or Defendant) | Access to Justice |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | Litigation | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. | 26 USC 7609 | State Statutes |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | Security Act | | ☐ 890 Other Statutory Actions |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- X 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Copyright infringement - 17 U.S.C. 501, Trademark Infringment, 15 U.S.C. 1114, Trademark Dilution - 15 U.S.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes    X No

**VIII. RELATED CASE(S)** (See instructions):
**IF ANY**

JUDGE **Ed Kinkade**

DOCKET
NUMBER **3:04-CV-320-K**

DATE  9/3/04

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUN _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

JS 44 Reverse (Rev. 12/96)

**INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44**

Authority For Civil Cover Sheet

ORIGINAL



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

SEP - 7 2004

CLERK, U.S. DISTRICT COURT
By _____
Deputy

BOSE CORPORATION,

    **Plaintiff,**

    v.

T3 LINK, INC. and WEB HOSTING ETC.,

    **Defendants.**

CIVIL ACTION

NO. _____

SECTION "___"

MAGISTRATE _____

## PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT

Plaintiff, the BOSE Corporation ("Bose") brings this action against T3 LINK, INC. ("T3 Link") and WEB HOSTING ETC. ("Web Hosting Etc") (collectively, "Defendants") for damages and temporary, preliminary and permanent injunctive relief under the laws of the United States. For this Complaint, Bose alleges knowledge with respect to its own acts and otherwise on information and belief and alleges as follows:

### I.    INTRODUCTION

This is an action for contributory and vicarious copyright, contributory trademark infringement and contributory trademark dilution arising out of the willful conduct of Defendants. Defendants are a commercial enterprise that, among other services, provide web hosting to Internet websites. Through their web hosting services, Defendants enable and encourage Internet users to connect to Defendants' computer servers to visit and purchase products from websites on those servers, including: (1) www.vertigoonline.com, (2) www.azizdirect.com, (3) www.realdealonline.com, and (4) www.boseetc.com (collectively, www.vertigoonline.com, www.azizdirect.com, www.realdealonline.com, and www.boseetc.com are

**PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT – Page 1**

referred to as "Vertigo Online").[1]

Defendants have willfully, deliberately, and with prior notice and knowledge of Bose's registered copyrights and trademarks, committed and are committing acts of copyright and trademark infringement. Specifically, as shown more fully below, Defendants' actions as Vertigo Online's web hosting company have allowed for the illegal copying and reproducing of Bose's copyrighted and trademarked materials to take place on its servers and be made available to millions of Internet users, and to mislead the public into believing that the illegally copied and reproduced materials and products on its servers originate with Bose, are licensed by Bose, or are in some way sanctioned by or affiliated with Bose. Defendants are aware that virtually all of the reproductions it enables and encourages are infringing and in violation of federal laws.

The infringement of Bose's intellectual property is used to sell thousands of dollars of unwarranted products to unsuspecting consumers. Defendants and Vertigo Online are essentially running an online bazaar or flea market devoted to the pirating of Bose's registered copyrights and trademarks. Defendants enable and encourage this pirating because they receive a percentage of the revenues made by Vertigo Online through its illegal activity. Thus, Defendants have built a business model and seek to profit from the daily, massive infringement of Bose's intellectual property. Defendants' conduct has caused and continues to cause Bose grave and irreparable harm, which must be stopped.

## II.     SUBJECT MATTER JURISDICTION

1.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. §§ 1121, 1125(d), 17 U.S.C. § 501, and 28 U.S.C. §§ 1331, 1338(a).  The matter in controversy exceeds, exclusive of interest and costs, the sum of seventy-five thousand dollars.

---

[1]   Bose has sued Vertigo Online for its own acts of infringement. *See Bose Corporation v. Mauriciu Tudor, et al.*; Case No. 3:04-cv-320-K; United States District Court, Northern District of Texas, Dallas Division.

### III.   VENUE

2.      Venue is proper in this district and this court pursuant to 28 U.S.C. § 1400(a) because this lawsuit, as stated above and demonstrated herein, arises under an Act of Congress related to copyrights and Defendants are all subject to personal jurisdiction in this district such that they "may be found" in this district.  Venue is also proper in this district and this court pursuant to 28 U.S.C. §§ 1391(b).  The copyrighted subject matter and trademarks that are the subject of this litigation were distributed and offered for distribution in this district and products illustrated in the copyrighted subject matter and identified by the trademarks were offered for sale in this district, and the claims alleged in this action arose in this district.

### IV.   PARTIES AND PERSONAL JURISDICTION

3.      Bose, is a Delaware corporation with its principal place of business in Framingham, Massachusetts, is a developer, promoter, advertiser, distributor, and licensor of electroacoustical products, and does business in this district.

4.      Defendant T3 Link, a Florida corporation whose owners and/or operators are James Murphree, Tom Murphree, and David Murphree.  T3 Link is located at 914 West 26th Street, Lynn Haven, Florida 32444.  T3 Link is a corporation which transacts business nationally through its internet websites, including www.t3link.com and www.webhostingetc.net and may be served through its registered agent, Coppertop Industries, Inc., at 914 West 26th Street, Lynn Haven, Florida 32444.

5.      Defendant Web Hosting Etc is an unknown corporation doing business under the fictitious name Web Hosting Etc, whose owner is T3 Link, whose owners and/or operators are in turn James Murphree, Tom Murphree, and David Murphree.  Web Hosting Etc is located at 9925 Haynes Bridge Rd. #224, Alpharetta, Georgia 30022.   Web Hosting Etc transacts business nationally through its internet website www.webhostingetc.net and may be served through T3 Link's registered agent, Coppertop Industries, Inc., at 914 West 26th Street, Lynn Haven, Florida 32444.

6.     The acts of infringement and other wrongful acts alleged in this Complaint occurred and arose in the Northern District of Texas.  Bose advertises and sells its products in Texas through it's Internet website and through retail stores it owns in Texas, including stores in Grapevine, Frisco, Houston, Katy, and San Marcos.

7.     This Court has personal jurisdiction over Defendants because, among other things, Defendants have purposefully availed themselves of the laws of the State of Texas.  In particular, Defendants operate a commercial enterprise with "interactive" websites whereby Defendants enter into contracts that involve the knowing and repeated transmission of computer files over the Internet.  Bose advertises and sells its products in Texas through it's Internet website and through retail stores it owns in Texas, including stores in Grapevine, Frisco, Houston, Katy, and San Marcos.  Consequently, Defendants' activities are such that they could reasonably expect to be made to answer a suit in a Texas forum.

## V.     THE PLAINTIFF

8.     Bose is in the business of developing, promoting, advertising, marketing, and distributing electroacoustical products for the reproduction of sound.  Bose was founded in 1964 by Dr. Amar G. Bose, professor of electrical engineering at the Massachusetts Institute of Technology ("MIT").  While doing graduate work at MIT in the 1950s, Dr. Bose was disappointed to find that speakers with impressive technical specifications failed to reproduce the realism of a live performance.

9.     This led to extensive research in the fields of speaker design and psychoacoustics -- the human perception of sound.  Dr. Bose's findings resulted in significantly new design concepts that help deliver the emotional impact of live music.  Bose established itself by introducing the 901® Direct/Reflecting® speaker system in 1968. With this introduction, Bose achieved international acclaim by setting a new standard for lifelike sound reproduction.

10.     Fourteen years of research led to the development of acoustic waveguide speaker technology, found in its award-winning Bose Wave® radio and Acoustic Wave® music systems. The introduction of Bose Acoustimass® speaker technology reshaped conventional thinking about

the relationship between speaker size and sound. Speakers small enough to fit in the palm of your hand produce sound quality previously thought impossible from small speakers.

11.     For arenas and other large venue applications, Bose Auditioner® audio demonstrator technology removes the historical guesswork from sound system design. It allows builders, architects and facility managers to hear precisely what a Bose system will sound like in their building, before any equipment is installed, even if the building only exists as a blueprint. The proprietary, integrated system design found in Bose Lifestyle® systems has set new standards for complete home audio solutions, engineered to be the best sounding, easiest to use music and home theater systems ever.

12.     Bose maintains an exceptionally strong commitment to research. Bose strives to identify things which, when made better, improve people's lives, and aims for excellence in everything from the way Bose runs its business to their customer service from the products to the owner's manuals customers use to set them up.

13.     Bose has operations in the United States, Europe, Canada, Australia, Japan, Russia, China and India. The company that started in 1964 with a handful of people is now an international success. Wholly-owned Bose subsidiaries, distributors, and manufacturing facilities are found throughout the World.

14.     Bose's corporate headquarters is located in Framingham, Massachusetts USA, but the following is a list of its worldwide presence:

**Bose's wholly owned sales organizations are located in:**

| | |
|---|---|
| Australia | Italy |
| Austria | Ireland |
| Belgium | Japan |
| Canada | Mexico |
| China | The Netherlands |
| Denmark | Norway |
| Dubai | Poland |
| France | Sweden |
| Germany | Switzerland |
| Hong Kong | Taiwan |
| India | United Kingdom |

**PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT** – Page 5

**Bose's distribution networks are located in countries throughout:**

| | |
|---|---|
| Africa | Europe |
| Asia | Middle East |
| Caribbean | Pacific Islands |
| Central America | South America |

**Bose's manufacturing sites are located in:**

Framingham, Massachusetts, USA
Carrickmacross, Ireland
Columbia, South Carolina, USA
Hillsdale, Michigan, USA
San Luis, Rio Colorado, Sonora, Mexico
Tijuana B.C., Mexico
Yuma, Arizona, USA

**Bose's wholly owned retail stores in Texas are located in:**

Grapevine, Texas, USA
Frisco, Texas, USA
Houston, Texas, USA
Katy, Texas, USA
San Marcos, Texas, USA

## VI.    BOSE'S TRADEMARKS AND COPYRIGHTS

15.     Bose is the sole and exclusive owner of several federally registered trademarks for the mark BOSE, which is on the U.S. Patent and Trademark Office's ("PTO") Principal Register. Bose has continuously used the BOSE® brand name and trademarks for approximately four decades.  For Example, the PTO issued the registration for the BOSE trademark (and Design) to Bose on May 30, 1967, and assigned it U.S. Trademark Registration No. 829,402, for use on and in commerce for acoustical transducer systems for reproduction of sound. The first use date was at least as early as 1966, which is long prior to the use by Defendants.  A true and correct copy of the registration for the printout from the U.S. Patent and Trademark Office's Trademark Electronic Search System ("TESS") evidencing the registration is attached hereto as **Exhibit A-1**.  Said registration is in full force and effect.

**PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT – Page 6**

16. Some of the other federal trademark and service mark registrations for marks consisting of and/or incorporating the wording "BOSE" include, inter alia, the following:

| Reg. No./ Reg. Date | Mark | Goods/Services |
|---|---|---|
| 991,271 8/20/74 | BOSE | loudspeaker systems; electrical power processors – namely, power amplifiers, inverters, and battery chargers, in Int'l Class 9 |
| 1,297,699 9/25/84 | BOSE & Design **_BOSE_** | clothing – namely, shirts, hats and jackets, in Int'l Class 25 |
| 1,727,482 10/27/92 | BOSE | printed matter; namely, catalogs, newsletters and brochures in the field of electronic and electro-acoustical equipment, in Int'l Class 16; and repair of electronic and electro-acoustical equipment, in Int'l Class 37 |
| 1,738,278 9/15/92 | BOSE & Design **_BOSE_** | printed matter; namely, catalogs, newsletters, and brochures all in the field of electronics and electro-acoustical equipment, in Int'l Class 16; and services and repair of electronic and electroacoustical equipment, in Int'l Class 37 |
| 1,828,700 3/29/94 | BOSE | retail store services in the field of electronic and electro-acoustical products, in Int'l Class 42 |
| 1,830,727 4/12/94 | BOSE & Design **_BOSE_** | retail services in the field of electronic and electro-acoustical products, in Int'l Class 42 |
| 2,288,004 10/19/99 | BOSE | computerized on-line retail services in the field of sound reproduction products, and shopping information related thereto, in Int'l Class 35 |
| 2,108,847 | LIFESTYLE | music systems consisting of a loudspeaker system and power amplifier and at least one of a CD player, tape player and radio tuner in Int'l Class 009 |
| 1,622,251 11/13/90 | LIFESTYLE | loudspeaker systems in Int'l Class 009 |

| Reg. No./ Reg. Date | Mark | Goods/Services |
|---|---|---|
| 2,734,489<br><br>7/8/03 | ADAPTIQ | computer hardware and software for adjusting characteristics of sound system based on properties of environment where sound system is located in Int'l Class 009 |
| 1,478,408<br><br>3/01/88 | ACOUSTIMASS | loudspeaker systems in Int'l Class 009 |

A true and correct copy of the printouts from TESS evidencing these registrations is attached hereto as **Exhibit A-2**. Said registrations are in full force and effect. The trademarks contained in these registrations are hereinafter referred to collectively as the "BOSE® Marks."

17.     In addition, Bose has trademark registrations of the BOSE® Marks in many other countries, including, but not limited to, Australia, Canada, China, France, Germany, Hong Kong, Italy, Japan, Mexico, Singapore, South Korea, Spain and Taiwan.

18.     Bose has been extensively engaged in the business of using and/or authorizing others to use the BOSE® Marks in its marketing programs throughout the world including the United States. Bose licenses or authorizes the sale of its products and the use of its copyrighted works and the Bose® Marks pursuant to agreements with authorized dealers. Attached hereto as **Exhibit A-21** is a true and correct copy of Bose's Dealer Agreement. Through this agreement, Bose ensures and regulates considerable service and quality controls over authorized dealers. Without this agreement and the contractual obligations its imposes upon dealers, Bose cannot assure that consumers who purchase Bose products obtain that service and quality Bose demands and requires. The BOSE® Marks are well-known, famous, inherently distinctive and/or, have acquired distinctiveness long prior to the use by Defendants. The goodwill associated with the BOSE® Marks is a valuable asset needed to ensure Bose's long-term ability to compete in the electroacoustical market. Plaintiff has expended great effort and considerable resources in the promoting and advertising of its goods and services under the BOSE® Marks. As a result of this widespread and continuous use and promotion, the BOSE® Marks have become widely associated with Plaintiff; the BOSE® Marks identify Plaintiff as the source of its goods and

services sold; and represent the valuable goodwill of the Plaintiff among members of the consuming public.

19.     Among other things, (a) the marks have acquired a high degree of distinctiveness and are "famous" as defined by 15 U.S.C. § 1125(c), because of the mark's acquired distinctiveness in identifying Bose's development, promotion, advertising, and distribution of electroacoustical products, Bose's online and Internet related activities, its extensive worldwide use over the past thirty-seven years, and the widespread advertising and publicity the mark has received in national and international media., (b) Bose has used the BOSE® trademarks beginning as early as 1964, well prior to Vertigo Online and Defendants' first use of the marks, and continuously for at least thirty-seven years throughout the United States in connection with Bose's products; (c) Bose has extensively advertised and publicized the marks for many years throughout the United States; (d) Bose has used the marks in a broad geographical trading area encompassing all of the states and territories of the United States, and abroad; and (e) the marks have an extremely high degree of recognition among the public, including on the Internet.

20.     On June 27, 2003, Bose registered its Worldwide Web Site with the United States Copyright Office.  A true and correct copy of the registration for this copyright is attached hereto as **Exhibit A-3**.  Bose, a U.S. citizen, created an original work consisting of several photographs and text entitled "Bose Corporation Worldwide Web Site."  A true and correct electronic copy of the Bose Corporation Worldwide Web Site with selected printouts is attached hereto as **Exhibit A-4**.  This Web Site is copyrightable subject matter under 17 U.S.C. § 101 *et seq*.  Said registration is in full force and effect.  As such, Bose has the exclusive rights, among other things, to reproduce and distribute the images and text found on the Bose Corporation Worldwide Web Site to the public.

21.     On August 23, 2004, Bose registered its Copy Block for the Lifestyle® 38 DVD Home Entertainment System with the United States Copyright Office.  A true and correct copy of the registration for this copyright is attached hereto as **Exhibit A-5**.  Bose, a U.S. citizen, created an original work consisting of several photographs and text entitled "Bose Corporation

Launch CD for New Lifestyle DVD home entertainment & expansion products." A true and correct copy of the Copy Block for the Lifestyle® 38 DVD Home Entertainment System is attached hereto as **Exhibit A-6**. This Copy Block is copyrightable subject matter under 17 U.S.C. § 101 *et seq*. Said registration is in full force and effect. As such, Bose has the exclusive rights, among other things, to reproduce and distribute the images and text found on the Lifestyle® 38 DVD Home Entertainment System Copy Block to the public.

22. On August 23, 2004, Bose registered its Copy Block for the Lifestyle® 48 DVD Home Entertainment System with the United States Copyright Office. A true and correct copy of the registration for this copyright is attached hereto as **Exhibit A-5**. Bose, a U.S. citizen, created an original work consisting of several photographs and text entitled "Bose Corporation Launch CD for New Lifestyle DVD home entertainment & expansion products." A true and correct copy of the Copy Block for the Lifestyle® 48 DVD Home Entertainment System is attached hereto as **Exhibit A-7**. This Copy Block is copyrightable subject matter under 17 U.S.C. § 101 *et seq*. Said registration is in full force and effect. As such, Bose has the exclusive rights, among other things, to reproduce and distribute the images and text found on the Lifestyle® 48 DVD Home Entertainment System Copy Block to the public.

23. Through its marketing and selling avenues, Bose has sought to and has in fact exploited its exclusive rights in the Bose® Trademark and Bose's copyrights in Texas. Those efforts have borne fruit in Texas both in the past and currently, in that Bose has sold, is selling and expect to continue selling and marketing its electroacoustical products for the reproduction of sound in Texas. Specifically, Bose advertises and sells its products in Texas through it's Internet website, through retail stores it owns in Texas, including stores in Grapevine, Frisco, Houston, Katy, and San Marcos, and through other authorized dealers. In this year alone, these sales amount to over $37 million and nearly $2 million in taxes paid to the State of Texas.

## VII. DEFENDANTS' UNLAWFUL CONDUCT

24. As shown below, Defendants are liable to Bose for (1) contributory and vicarious copyright infringement, a violation of 17 U.S.C. § 501; (2) contributory infringement of Bose's

registered trademarks, a violation of the Lanham Act, 15 U.S.C. § 1114; and (3) contributory trademark dilution, a violation of the Federal Trademark Dilution Act ("FTDA"), 15 U.S.C. § 1125.

25. Defendants, through Web Hosting Etc, provide web hosting solutions to clients in all 50 states and over 37 countries. Important for this action, Defendants provide web hosting solutions to www.vertigoonline.com,[2] www.azizdirect.com,[3] www.realdealonline.com,[4] and www.boseetc.com.[5] A true and correct copy of the WHOIS information for these websites showing that Defendants provide the web hosting is attached hereto as **Exhibit A-8**.

26. Vertigo Online and Defendants are not presently and have at no time in the past been authorized Bose dealers and have never signed the Bose's Dealer Agreement. Defendants' customer, Vertigo Online, operates a business in marketing, advertising, and distributing electroacoustical products, including Bose systems, to consumers. Vertigo Online has illegally marketed, advertised, and distributed Bose systems using the websites vertigoonline.com, azizdirect.com, realdealonline.com, and boseetc.com. Vertigo Online could not have illegally marketed, advertised, and distributed Bose systems without the direct assistance of Defendants. Further, as Vertigo Online's web hosting company, Defendants have allowed Vertigo Online to illegally copy and reproduce copies of Bose's copyrighted and trademarked material on the Vertigo Online websites and reproduce these copies to the potentially millions of Internet users. Through Defendants' conduct, the public has been misled into believing that Vertigo Online's products or

---

[2] The domain name www.vertigoonline.com is registered to Vertigo Online Inc., whose "WHOIS" address is not listed. The Administrative Contact and Technical Contact is an email address azdmin@realdealonline.com. The Registration Service Provider is listed as Web Hosting Etc, whose address is 9925 Haynes Bridge Road #224, Alpharetta, GA 30022.

[3] The domain name www.azizdirect.com is registered to an unknown Registrant, whose "WHOIS" address is not listed. The Administrative Contact and Technical Contact is also Vertigo Online Inc. The Registration Service Provider is listed as Web Hosting Etc, whose address is 9925 Haynes Bridge Road #224, Alpharetta, GA 30022.

[4] The domain name www.realdealonline.com is registered to an unknown Registrant, whose "WHOIS" address is not listed. The Administrative Contact and Technical Contact is an email address azdmin@realdealonline.com. The Registration Service Provider is listed as Web Hosting Etc, whose address is 9925 Haynes Bridge Road #224, Alpharetta, GA 30022.

[5] The domain name www.boseetc.com is registered to Adplus Etc., S.A. (which is owned and controlled by Vertigo Online Inc. and/or Mark Neal), whose "WHOIS" address is listed as Apdo. 4-092, Boquete, ChiriquA 00000, PA. The Administrative Contact is Adplus Etc., S.A and the Technical Contact is T3 Link and Web Hosting Etc. The Registration Service Provider is listed as Web Hosting Etc, whose address is 9925 Haynes Bridge Road #224, Alpharetta, GA 30022.

services originate with Bose, are licensed by Bose, or are in some way sanctioned by or affiliated with Bose.

27.     Vertigo Online has sent and, as Vertigo Online's web hosting service, Defendants have caused to be sent, Internet e-mail and Internet images throughout the United States for the purpose of soliciting unsuspecting customers to acquire Bose equipment.   These e-mails and advertisements are also intended to mislead consumers who might otherwise be suspicious of the Bose systems advertised on the websites hosted by Defendants due to their extremely low prices.   In addition, the websites hosted by Defendants provide shipping materials falsely stating that the Bose products are fully warranted, which they are not.

28.     Defendants reserve the right to take "a variety of actions" against its customers: "We may remove information that violates our policies, implement screening software designed to block offending transmissions, or take any other action we deem appropriate, including termination of a subscriber's contract with us."   A true and correct copy of Defendants' Acceptable Use Policy is attached hereto as **Exhibit A-9**.   Thus, Defendants reserve the right to shut down their servers, delete any infringing material they find, or prevent the transmission of infringing material.   Defendants also control access to Vertigo Online as they supply all of the equipment and means necessary for Internet users to visit websites hosted on its servers, including the Vertigo Online websites.   Despite the fact that Defendants have the right and ability to supervise and prohibit Vertigo Online's infringing activity, Defendants have refused to remove or disable access to the infringing material because of the financial incentive they have to maintain the Vertigo Online websites operational and reproduce this infringing material to the public via the Internet.   For example, Vertigo Online pays Defendants a monthly rental fee in exchange for hosting services.   In addition, Defendants receive a percentage of the illegal sales of Bose products made on the Vertigo Online websites.

29.     In a letter dated July 16, 2004, addressed and sent to Defendants via Certified Mail at Webhostingetc.net – A T3 Link Company, 9925 Haynes Bridge Rd., Suite 224, Alpharetta, GA   30022 and via facsimile at 678-292-0121, Bose advised Defendants of the

copyright infringement taking place on its servers via the www.vertigoonline.com website.  A true and correct copy of the letter is attached hereto as **Exhibit A-10**.   This letter informed Defendants of the unauthorized and unlawful infringement taking place on its servers by providing printouts comparing the pictures and text of Bose products on the www.vertigoonline.com website to Bose's copyrighted texts and images.  *Compare id.* at 2 (printout from www.bose.com website displaying Bose's copyrighted picture of its 3-2-1 Home Entertainment System) *with id.* at 4 (printout from www.vertigoonline.com website illegally reproducing Bose's copyrighted picture of its 3-2-1 Home Entertainment System on Defendants' server); *compare id.* at 6 (printout from www.bose.com website displaying Bose's copyrighted picture of its Lifestyle® 28 Home Entertainment System) *with id.* at 9 (printout from www.vertigoonline.com website illegally reproducing Bose's copyrighted picture of its Lifestyle® 28 Home Entertainment System on Defendants' server); and *compare id.* at 11 (printout from www.bose.com website displaying Bose's copyrighted picture of its Lifestyle® 35 Home Entertainment System) *with id.* at 13 (printout from www.vertigoonline.com website illegally reproducing Bose's copyrighted picture of its Lifestyle® 28 Home Entertainment System on Defendants' server).  Despite Bose's request that Defendants respond expeditiously to remove or disable access to the infringing material from its servers, Defendants failed to do.

30.     In a letter dated July 29, 2004, addressed and sent to Defendants via Certified Mail at Webhostingetc.net – A T3 Link Company, 9925 Haynes Bridge Rd., Suite 224, Alpharetta, GA  30022 and via facsimile at 678-292-0121, Bose advised Defendants of the copyright infringement taking place on its servers via the www.azizdirect.com website.  A true and correct copy of the letter is attached hereto as **Exhibit A-11**.   This letter informed Defendants of the unauthorized and unlawful activities and provided printouts of comparing the www.azizdirect.com website to Bose's copyrighted texts and images.  All of the pictures on the www.azizdirect.com website are copyrighted images owned by Bose.  *Compare* **Exhibit A-4** (Bose's copyrighted picture of (1) Lifestyle® 50 Home Theater System, (2) 3-2-1 Home Entertainment System, (3) Acoustimass® 16 Home Theater Speaker System, and (4) Personal®

**PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT – Page 13**

music center expansion remote control (set to 102.5 FM) and CD magazine)) *with* **Exhibit A-12** (printout from www.azizdirect.com website illegally reproducing Bose's copyrighted picture of (1) Lifestyle® 50 Home Theater System, (2) 3-2-1 Home Entertainment System, (3) Acoustimass® 16 Home Theater Speaker System, and (4) Personal® music center expansion remote control (set to 102.5 FM) and CD magazine) on Defendants' server). Despite Bose's request that Defendants respond expeditiously to remove or disable access to the infringing material from its servers, Defendants failed to do.

31.     In a letter dated July 29, 2004, addressed and sent to Defendants via Certified Mail at Webhostingetc.net – A T3 Link Company, 9925 Haynes Bridge Rd., Suite 224, Alpharetta, GA  30022 and via facsimile at 678-292-0121, Bose advised Defendants of the copyright infringement taking place on its servers via the www.realdealonline.com website.  A true and correct copy of the letter is attached hereto as **Exhibit A-13**.  This letter informed Defendants of the unauthorized and unlawful activities and provided printouts of comparing the www.realdealonline.com website to Bose's copyrighted texts and images.  All of the pictures on the www.realdealonline.com website are copyrighted images owned by Bose.  *Compare* **Exhibit A-4** (Bose's copyrighted picture of (1) Lifestyle® 50 Home Theater System, (2) 3-2-1 Home Entertainment System, (3) Acoustimass® 16 Home Theater Speaker System, and (4) Personal® music center expansion remote control (set to 102.5 FM) and CD magazine)) *with* **Exhibit A-14** (printout the www.realdealonline.com website illegally reproducing Bose's copyrighted picture of (1) Lifestyle® 50 Home Theater System, (2) 3-2-1 Home Entertainment System, (3) Acoustimass® 16 Home Theater Speaker System, and (4) Personal® music center expansion remote control (set to 102.5 FM) and CD magazine) on Defendants' server).  Despite Bose's request that Defendants respond expeditiously to remove or disable access to the infringing material from its servers, Defendants failed to do.

32.     In a letter dated July 29, 2004, addressed and sent to Defendants via Certified Mail at Webhostingetc.net – A T3 Link Company, 9925 Haynes Bridge Rd., Suite 224, Alpharetta, GA  30022 and via facsimile at 678-292-0121, Bose advised Defendants of the

copyright infringement taking place on its servers via the www.bosectc.com website.  A true and correct copy of the letter is attached hereto as **Exhibit A-15**.  This letter informed Defendants of the unauthorized and unlawful activities and provided printouts of comparing the www.bosectc.com website to Bose's copyrighted texts and images.  All of the pictures on the www.boseetc.com website are copyrighted images owned by Bose.  *Compare* **Exhibit A-4** (Bose's copyrighted picture of (1) Lifestyle® 50 Home Theater System, (2) Lifestyle® 35 Home Theater System, (3) Lifestyle® 28 Home Theater System, (4) Acoustimass® 16 Home Theater Speaker System, (5) 3-2-1 Home Entertainment System) *with* **Exhibit A-16** (printout from www.boseetc.com website illegally reproducing (1) Lifestyle® 50 Home Theater System, (2) Lifestyle® 35 Home Theater System, (3) Lifestyle® 28 Home Theater System, (4) Acoustimass® 16 Home Theater Speaker System, and (5) 3-2-1 Home Entertainment System on Defendants' server).  Despite Bose's request that Defendants respond expeditiously to remove or disable access to the infringing material from its servers, Defendants failed to do.

33.    Although Defendants have recently deleted some of the copyrighted pictures that were found on the Vertigo Online websites, many remain.  *Compare* **Exhibit A-4** (Bose copyrighted pictures), *with* **Exhibit A-17** (a true and correct copy of a printout from www.vertigoonline.com illegally reproducing copies of Bose copyrighted pictures).  Worse, Defendants have taken no action to remove or disable access to the websites' infringement of Bose's copyrighted text from the websites.  Specifically, as part of its exclusive right to use and/or authorize others to use the BOSE copyrighted material in its marketing programs throughout the world including the United States, Bose provides its authorized dealers with product information and material, commonly referred to as the "Copy Blocks."  *See, e.g.,* **Exhibit A-6**: Copy Block for Lifestyle® 38 DVD Home Entertainment System; **Exhibit A-7**: Copy Block for Lifestyle® 48 DVD Home Entertainment System.  Bose is the copyright owner and owner of exclusive rights under copyright law with respect to written text found on these Copy Blocks.  As such, Bose has the exclusive rights, among other things, to reproduce the

copyrighted material in the Copy Blocks in copies or distribute copies of the copyrighted material in the Copy Blocks to the public, or authorize others to do so.

34.     In the July 16, 2004 and July 29, 2004 letters to Defendants, Bose informed Defendants of the copyright infringement of Bose's Copy Blocks text taking place on its servers on the www.vertigoonline.com, www.azizdirect.com, www.realdealonline.com, www.boseetc.com websites. *See* **Exhibits A-10, A-11, A-13, A-15**. Indeed, all or substantially all of the product information and descriptions found on the www.vertigoonline.com, www.azizdirect.com, www.realdealonline.com, www.boseetc.com websites are an exact copy of Bose's copyrighted text. For example, listed below is a side-by-side comparison of Bose's copyrighted Copy Block for its Lifestyle® 38 DVD Home Entertainment System with the infringing copyrighted text found on Defendants' servers.

| **Bose Copyrighted Text** | **Infringing Copyrighted Text** |
|---|---|
| *See* **Exhibit A-6**. | *See* **Exhibit A-18**, a true and correct copy of the Lifestyle® 38 Ad from www.vertigoonline.com. |
| "And now, Lifestyle® systems feature a new breakthrough technology that makes listening to music even more simple and enjoyable. New uMusic™ intelligent playback system lets you easily store your CD content in the elegant media center. You'll no longer need that big rack of bulky CDs. Imagine…no more searching for a CD. Your music is at your fingertips. No more wondering about what song you want to hear next – the uMusic system "learns" your musical preferences as you listen, and selects songs based on its knowledge of what you like." | "Once again, Bose® is redefining home entertainment. The Lifestyle® 38 features breakthrough technology that makes listening to music even more simple and enjoyable. The new uMusic™ intelligent playback system lets you easily store your CD content in the system's elegant media center. You'll no longer need that bulky rack of CDs because your music is at your fingertips. The Lifestyle® 38 has room for approximately 300 hours of music, which translates to about 160 CDs. Remarkably, the uMusic system also 'learns' your musical preferences as you listen to music on the system, and selects songs based on its knowledge of what you like." |
| "Innovative system design: each element is engineered to work in harmony with the others, delivering a combination of performance, elegance and simplicity unmatched by conventional component-based systems." | "Each element is engineered to work in harmony with the others, delivering a combination of performance, elegance and simplicity unmatched by conventional component-based systems." |

| | |
|---|---|
| "ADAPTiQ® audio calibration system, only from Bose, analyzes and adjusts the system's sound to the size and shape of your room, the placement of your speakers, and the locations where you sit to listen. As a result, you can enjoy greater freedom of speaker placement and the peace of mind that your system is delivering a quality Bose® performance." | "ADAPTiQ® audio calibration system, which analyzes and adjusts the system's sound to the size and shape of your room, the placement of your speakers, and the locations where you sit to listen. As a result, you can enjoy greater freedom of speaker placement and the peace of mind that your system is delivering a quality Bose performance." |
| "Five Direct/Reflecting® cube speaker arrays deliver more open, spacious sound throughout the listening area." | "Five small Direct/Reflecting® speaker arrays deliver dramatic, spacious sound throughout the listening area." |
| "Proprietary Videostage® 5 decoding and post-processing circuitry, digital 5.1 decoding and DTS® help deliver a high-quality, five-channel surround sound experience from practically any source: DVDs,. videocassettes, stereo CDs, even older mono TV shows and movies. | "Proprietary Videostage® 5 decoding and post-processing circuitry, digital 5.1 decoding and DTS help deliver a high-quality, five-channel surround sound experience from practically any source: DVDs,. videocassettes, stereo CDs, even older mono TV shows and movies." |
| "A suite of integrated signal processing technologies (Videostage® decoding and post-processing circuitry, automatic tonal adjustment, active electronic equalization, Digital Dynamic Range® compression circuitry) helps deliver better sound for movies, music, sports and TV programs. The Lifestyle® system determines which technologies are needed based on the source – and makes the necessary adjustments – automatically. As a result, users enjoy better performance with greater simplicity." | "A suite of integrated signal processing technologies (including the Videostage® circuitry, automatic tonal adjustment, active electronic equalization, and Digital Dynamic Range® compression circuitry) helps deliver better sound for movies, music, sports and TV programs. The Lifestyle® 38 determines which technologies are needed based on the source and makes the necessary adjustments automatically. As a result, users enjoy better performance with greater simplicity." |
| "Integrated DVD player provides playback of today's most popular audio and video content, DVD video (including progressive scan formats), DVD-R, CD, CD-R, CD-RW and MP3 CDs." | "The Lifestyle® 38's integrated DVD player provides playback of today's most popular audio and video content, including DVD-Audio (including progressive scan formats), DVD-R, CD, CD-R, CD-RW and MP3 CDs." |
| "Output jacks for two independently controllable rooms let you add Bose powered speakers and enjoy different audio sources in | "The Lifestyle® 38 doesn't like to be contained in one room. Output jacks for two independently controllable rooms let you add |

| | |
|---|---|
| different rooms at the same time – all from one easy-to-use system. Bose® link enables up to 14 additional rooms of sound, each with its own independent volume and mute control." | Bose powered speakers and enjoy different audio sources in different rooms at the same time, all from one one easy-to-use system. . . . Bose link enables up to 14 additional rooms of sound, each with its own independent volume and mute control." |
| "So your Lifestyle® system becomes the center of a whole-home solution that lets you enjoy sound throughout your home, wherever sound is important." | "So your Lifestyle® 38 system becomes the center of a whole-home solution that lets you enjoy sound throughout your home." |

Despite Bose's request that Defendants respond expeditiously to remove or disable access to the

infringing material from its servers, Defendants failed to do.

    35.    Similar copyright infringement is found on Defendants' servers regarding Bose's

copyrighted Copy Block for its Lifestyle® 48 DVD Home Entertainment System:

| **Bose Copyrighted Text** | **Infringing Copyrighted Text** |
|---|---|
| *See* **Exhibit A-7.** | *See* **Exhibit A-19**, a true and correct copy of the Lifestyle® 48 Ad from www.vertigoonline.com. |
| "Introducing a home entertainment system so revolutionary it will change the way you enjoy movies and listen to music. The Bose® Lifestyle® 48 DVD home entertainment system, the premier Bose system for both movies and music, features award-winning Jewel Cube® speaker arrays for dramatically lifelike surround sound. A hideaway Acoustimass® module produces the deep, powerful low notes that bring action scenes to life and fullness to music, Innovative Bose technologies take it from there, raising the Lifestyle® 48 system to a new level of performance, elegance and simplicity." | "Introducing a home entertainment system so revolutionary it will change the way you enjoy movies and listen to music. The Bose(R) Lifestyle(R) 48 DVD home entertainment system, the premier Bose system for both movies and music, features award-winning Jewel Cube(R) speaker arrays for dramatically lifelike surround sound. A hideaway Acoustimass(R) module produces the deep, powerful low notes that bring action scenes to life and fullness to music. Innovative Bose technologies take it from there, raising the Lifestyle(R) 48 system to a new level of performance, elegance and simplicity." |
| "The ADAPTiQ® audio calibration system customizes sound to your room, giving you a consistently high-quality performance each time you listen. And listening itself becomes more delightful with the new uMusic™ intelligent playback system. This proprietary Bose technology lets you easily store up to 340 hours of CD music in the elegant media center. Then it "learns" your musical preferences as you listen, and plays songs based on its | "The ADAPTiQ(R) audio calibration system customizes sound to your room, giving you a consistently high-quality performance each time you listen. And listening itself becomes more delightful with the new uMusic(TM) intelligent playback system. This proprietary Bose technology lets you easily store up to 340 hours of CD music in the elegant media center. Then it "learns" your musical preferences as you listen, and plays songs based on its |

| | |
|---|---|
| knowledge of what you like. Searching for a CD – even deciding what CD to listen to – becomes things of the past. And with Bose® link, you can easily hear your favorite music in other rooms of your home. Experience the new Lifestyle® 48 system – and experience a better way to listen…from Bose, the most respected name in sound." | knowledge of what you like. Searching for a CD – even deciding what CD to listen to – becomes things of the past. And with Bose(R) link, you can easily hear your favorite music in other rooms of your home. Experience the new Lifestyle(R) 48 system – and experience a better way to listen…from Bose, the most respected name in sound." |
| "Innovative system design: each element is engineered to work in harmony with the others, delivering a combination of performance, elegance and simplicity unmatched by conventional component-based systems." | "Innovative system design: each element is engineered to work in harmony with the others, delivering a combination of performance, elegance and simplicity unmatched by conventional component-based systems." |
| "ADAPTiQ® audio calibration system, only from Bose, analyzes and adjusts the system's sound to the size and shape of your room, the placement of your speakers, and the locations where you sit to listen. As a result, you can enjoy greater freedom of speaker placement and the peace of mind that your system is delivering a quality Bose® performance." | "ADAPTiQ(R) audio calibration system, only from Bose, analyzes and adjusts the system's sound to the size and shape of your room, the placement of your speakers, and the locations where you sit to listen. As a result, you can enjoy greater freedom of speaker placement and the peace of mind that your system is delivering a quality Bose® performance." |
| "New uMusic™ intelligent playback system revolutionizes how you listen to music. Store approximately 340 hours of music in the elegant media center. And then let the uMusic system take the experience further, by "learning" your musical preferences." | "New uMusic(TM) intelligent playback system revolutionizes how you listen to music. Store approximately 340 hours of music in the elegant media center. And then let the uMusic system take the experience further, by "learning" your musical preferences." |
| "Bose® link allows other Bose speakers and systems to seamlessly connect to a Lifestyle® system. So your Lifestyle® system becomes the center of a whole-home solution that lets you enjoy sound throughout your home, wherever sound is important." | "Bose(R) link allows other Bose speakers and systems to seamlessly connect to a Lifestyle(R) system. So your Lifestyle(R) System becomes the center of a whole-home solution that lets you enjoy sound throughout your home, wherever sound is important." |
| "Award-winning Jewel Cube® speaker arrays feature innovative designs such as a nautilus port and Direct/Reflecting® speaker technology to deliver more open, spacious sound throughout the listening area." | "Award-winning Jewel Cube(R) speaker arrays feature innovative designs such as a nautilus port and Direct/Reflecting (R) speaker technology to deliver more open, spacious sound throughout the listening area." |
| "Proprietary technology in the Acoustimass® module delivers powerful, ultra-low sound effects used in today's movies. You can hide | "Proprietary technology in the Acoustimass(R) module delivers powerful, ultra-low sound effects used in today's movies. You can hide |

| | |
|---|---|
| the module out of sight, and all the sound seems to come from the tiny cube speakers." | the module out of sight, and all the sound seems to come from the tiny cube speakers." |
| "Proprietary Videostage® 5 decoding and post-processing circuitry, digital 5.1 decoding and DTS® help deliver a high-quality, five-channel surround sound experience from practically any source: DVDs,. videocassettes, stereo CDs, even older mono TV shows and movies. " | "Proprietary Videostage(R) 5 decoding and post-processing circuitry, digital 5.1 decoding and DTS(R) help deliver a high-quality, five-channel surround sound experience from practically any source: DVDs,. videocassettes, stereo CDs, even older mono TV shows and movies." |
| "A suite of integrated signal processing technologies (Videostage® decoding and post-processing circuitry, automatic tonal adjustment, active electronic equalization, Digital Dynamic Range® compression circuitry) helps deliver better sound for movies, music, sports and TV programs. The Lifestyle® system determines which technologies are needed based on the source – and makes the necessary adjustments – automatically.  As a result, users enjoy better performance with greater simplicity." | "A suite of integrated signal processing technologies (Videostage(R) 5 decoding and post-processing circuitry, automatic tonal adjustment, active electronic equalization, and Digital Dynamic Range(R) compression circuitry) helps deliver better sound for movies, music, sports and TV programs.  The Lifestyle(R) system determines which technologies are needed based on the source – and makes the necessary adjustments – automatically.  As a result, users enjoy better performance with greater simplicity." |
| "Integrated DVD player provides playback of today's most popular audio and video content, DVD video (including progressive scan formats), DVD-R, CD, CD-R, CD-RW and MP3 CDs." | "Integrated DVD player provides playback of today's most popular audio and video content, DVD video (including progressive scan formats), DVD-R, CD, CD-R, CD-RW and MP3 CDs." |
| "Advanced control integration allows one easy-to-use Lifestyle® remote to control Lifestyle® system functions and the most frequently used commands for your TV, VCR, and cable box or satellite receiver – even from another room." | "Advanced control integration allows one easy-t0-use Lifestyle(R) remote to control Lifestyle(R) system functions and the most frequently used commands for your TV, VCR, and cable box or satellite receiver – even from another room." |

Despite Bose's request that Defendants respond expeditiously to remove or disable access to the infringing material from its servers, Defendants failed to do.

36.    Defendants' willful and intentional infringement of Bose's copyrighted material is not limited to these two products.  Instead, all or substantially all of the product information and descriptions found on the www.vertigoonline.com, www.azizdirect.com, www.realdealonline.com, www.boseetc.com websites are exact copies and reproductions of Bose's copyrighted text and

images, including but not limited to, the Bose® Lifestyle® 50 System, the Bose® Lifestyle® 35 System, the Bose® Lifestyle® 28 System, the Bose® Acoustimass® 15 II, and the Bose® Acoustimass® 10 III.  *Compare* **Exhibit A-4** (Bose copyrighted text for the Bose® Lifestyle® 50 System, the Bose® Lifestyle® 35 System, the Bose® Lifestyle® 28 System, the Bose® Acoustimass® 15 II, and the Bose® Acoustimass® 10 III) *with* **Exhibit A-20** (printout from www.vertigoonline.com website illegally reproducing Bose's copyrighted text for the Bose® Lifestyle® 50 System, the Bose® Lifestyle® 35 System, the Bose® Lifestyle® 28 System, the Bose® Acoustimass® 15 II, and the Bose® Acoustimass® 10 III).  As Vertigo Online's webhoster, Defendants had the right and ability to supervise and/or control the infringing conduct of Vertigo Online by, without limitation, removing the infringing material from the websites or preventing, disabling or terminating access to its computer servers that contained the infringing material, but failed to exercise such supervision and/or control because, as noted above, of the direct financial interest it has in the infringing activities.

37.     In addition, through its relationship with Vertigo Online, Defendants are infringing several of Bose's trademarks via the www.vertigoonline.com, www.azizdirect.com, www.realdealonline.com, www.boseetc.com websites through their unauthorized and illegal use of the marks, including (1) Bose Lifestyle® 50 Home Theater System; (2) Bose Lifestyle® 35 system; (3) Bose Lifestyle® 30 Series II Home Theater System; (4) Bose Lifestyle® 28 system; (5) Bose Lifestyle® 25 Series II Home Theater System; (6) Bose Lifestyle® 8 Series II system; and (7) Bose 3·2·1 home entertainment system; (8) Bose Lifestyle® 901® Music System, (9) Bose Lifestyle® 40 Music System; (10) Bose Lifestyle® 20 Music System; (11) Bose Lifestyle® 5 Series III Music System; (12) Bose Acoustimass® 16 Home Theater Speaker System; (13) Bose Acoustimass® 15II Series II Home Theater Speaker System; (14) Bose Acoustimass® 10III Series II Home Theater Speaker System; (15) Bose VCS-30® Center/Surround Speaker Package; (16) Bose VCS-10® Center Channel Speaker; (17) Bose Acoustimass® 5 Series III Speaker System; (18) Bose Acoustimass® 3 Series IV Speaker System; (19) Bose 161™ speakers; (20) Bose 251™ Environmental Speakers; (21) Bose 151® Environmental Speakers; (22) Bose 131® Marine

**PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT – Page 21**

Speakers; (23) Bose Lifestyle® 48 Home Theater System; and (24) Bose Lifestyle® 38 Home Theater System . *See, e.g.,* **Exhibits A-12, A-14, A-16 to A-20**. Vertigo Online could not operate its websites and sell Bose products without infringing Bose's trademarks. As Vertigo Online's webhoster, Defendants had the right and ability to supervise and/or control the infringing conduct of Vertigo Online by, without limitation, removing the infringing material from the websites or preventing, disabling or terminating access to its computer servers that contained the infringing material, but failed to exercise such supervision and/or control because, as noted above, of the direct financial interest it has in the infringing activities.

38.     In addition to the many letters sent to Defendants regarding this infringement, counsel for Bose has had numerous telephone conversations with Defendants' President, James Murphree, regarding the illegal trademark and copyright infringement taking place on its servers. *See* **Exhibit A**: DECLARATION OF VICTOR C. JOHNSON at ¶ 25. During these conversations, Defendants were informed, among other things, that (1) Vertigo Online was not an authorized dealer; (2) that all of the images and nearly all of the text regarding Bose products appearing on the Vertigo Online websites and located on Defendants' servers were direct infringements of Bose's copyrights; and (3) that Vertigo Online was improperly using Bose registered trademarks to mislead the public into believing that Vertigo Online's products or services originate with Bose, are licensed by Bose, or are in some way sanctioned by or affiliated with Bose. *Id.* Despite Bose's best efforts to stop this illegal activity and halt the pilfering of Bose's intellectual property, Defendants have refused to remove or disable access to the infringing material because of the financial incentive they have to maintain the websites operational and reproduce this infringing material to the public via the Internet. Indeed, in one conversation, Mr. Murphree stated that because Defendants make $10,000.00 a month from Vertigo Online and Bose paid them nothing, he had no incentive to remove or disable access to the infringing material.[6] *Id.*

---

[6]  In addition, Bose has received numerous complaints regarding Vertigo Online and the activities of marketing, advertising, and distributing Bose products. Many of the complaints have come from consumers who are confused about the source and genuineness of the products that Vertigo Online advertise and market through the web sites located on Defendants' servers. On information and belief, through the hosting of these websites, Defendants have induced large numbers of unsuspecting consumers to purchase or attempt to purchase Bose products from Vertigo

## VIII.   <u>INJURY TO BOSE CORPORATION</u>

39.     Defendants have committed and are committing acts of contributory and vicarious copyright infringement and contributory trademark infringement and dilution.  These acts are willful, deliberate, and committed with prior notice and knowledge of Bose's registered copyrights and trademarks.  At a minimum, Defendants were willfully blind and acted in reckless disregard of Bose's registered copyrights and trademarks.  Based on the scope of Defendants' known activities, Bose believes that Defendants have engaged in other similar activities that constitute further deliberate and willful contributory and vicarious copyright infringement and contributory trademark infringement and dilution and other violations of Bose's rights.

40.     By this conduct, and particularly by their allowing and profiting from advertising activities and unauthorized reproduction of the BOSE® Marks and Bose's copyrighted material, Defendants have misappropriated Bose's advertising ideas and style of doing business and have infringed on Bose's copyrights, titles, and slogans all of which has caused Bose substantial harm, including, but not limited to, suffering direct harm in Texas.

41.     The injuries and damages that Bose has sustained have been directly and proximately caused by Defendants' wrongful act of allowing, causing and failing to prohibit the misappropriation of Bose's advertising ideas and style of doing business and infringement of Bose's copyrights, titles, and slogans all of which has caused Bose substantial harm, including but not limited to, suffering direct harm in Texas.

42.     Defendants' acts have caused, allowed, and failed to prohibit the false and/or deceptive advertising efforts of Vertigo Online allows Defendants to erode the reputation and goodwill built up at great labor and expense by Bose in the on-line retail market for sound reproduction products.  These deceptive advertisements and promotions are likely to irreparably damage the reputation and goodwill developed by Bose.

---

Online believing them to be genuine Bose products coming from an authorized dealer Bose.  A number of these consumers subsequently contacted Bose directly questioning (1) the genuineness of the products they received, (2) whether Vertigo Online is actually an authorized Bose dealers, and (3) the applicability of the Bose warranty.  A number of other consumers also contacted Bose and complained because Vertigo Online charged these unsuspecting consumer's credit cards, but never delivered any merchandise.

43.     Defendants have also caused, allowed, and failed to prohibit false and deceptive statements regarding Vertigo Online's supposed authorization to sell Bose products and competing products. Defendants know that Vertigo Online, by its own admission, it is "not [an] Internet authorized Bose dealer." **Exhibit 20**. Defendants' acts have caused, allowed, and failed to prohibit these false and deceptive statements regarding Vertigo Online's authorization to sell Bose products and competing products, and have deceived (or have the tendency to deceive and have the potential to affect customer purchasing decisions of) a substantial segment of the on-line retail and retail-level consumers of sound reproduction products.

44.     Defendants' acts constitute an invasion of Bose's valuable property rights in a manner that unjustly enriches Defendants and has damaged Bose in an amount which is far in excess of $75,000, exclusive of costs and interest. Through their acts of hosting Vertigo Online to illegally market and sell Bose's products over the Internet by reproducing the Bose® Trademarks and Bose copyrights without authorization and receiving a percentage of those sales, Defendants have sought to and have in fact wrongfully exploited Bose's exclusive rights in the Bose® Trademark and Bose's copyrights in the United States, including Texas. Further, Defendants' acts have borne fruit in Texas, in that Defendants have reaped undeserved profits at Bose's expense as Vertigo Online has sold, is selling and is expecting to continue selling and marketing Bose products in the United States, including Texas. Defendants are illegally exploiting the Bose® Trademark and Bose's copyrights by receiving a percent of the sales of Bose products sold nationally, including in Texas, from Vertigo Online. Defendants' hosting services reflect Defendants and Vertigo Online's expectation of, and financial interest in, having the infringing products distributed throughout the United States, including in Texas. Defendants are allowing the infringing material on its servers to be distributed without limitation, and have been and are presently offering for sale Bose's products through the illegal reproduction of the Bose® Trademarks and Bose's copyrights in Texas. Defendants have taken no action to limit or restrict access to its servers that contain the infringing material from Texas residents and instead

are illegally exploiting the Bose® Trademark and Bose's copyrights on the broadest possible geographical basis.

45.     Defendants have committed unlawful acts in the course of hosting the Vertigo Online website by causing, allowing, and failing to prohibit the unauthorized sale of Bose products and the rampant copyright infringement, trademark infringement, and trademark dilution taking place on its servers.   Defendants' conduct has proximately caused damage to Bose in an amount which is far in excess of $75,000, exclusive of costs and interest.   Upon information and belief, Defendants' alleged exploitation of the Bose® Trademarks and Bose's copyrights bore fruit in Texas after Defendants placed Bose's intellectual property into the stream of commerce on their servers.

46.     Upon information and belief, Bose has suffered irreparable injury in the marketplace and has lost sales from consumers in Texas that were diverted to vertigoonline.com, azizdirect.com, realdealonline.com, and boseetc.com, including lost sales in this district.   Worse, despite the fact that Defendants have the right and ability to supervise and prohibit the infringing activity taking place on its servers, Defendants have been unjustly enriched at the expense of Bose from the sale of products, including sales in Texas, because of the direct financial interest Defendants have in the infringing activity.

47.     The natural, probable and foreseeable result of Defendants' wrongful conduct has been and will continue to be to deprive Bose of the benefits of selling its products to others or authorizing others to do the same, to deprive Bose of goodwill, and to injure Bose's relations with present and prospective customers.

48.     Bose has also sustained and will continue to sustain damage as a result of Defendants' wrongful conduct and Defendants' copying, use, production and sale of infringing products.   In addition, Defendants' wrongful conduct has deprived and will continue to deprive Bose of opportunities for expanding its goodwill.   Unless enjoined by this Court, Defendants intend to continue their course of conduct and to wrongfully copy, use, produce, infringe upon, sell and otherwise profit from the Bose® Marks and the Bose's copyrights.   Bose has no

adequate remedy at law to redress all of the injuries that Defendants have caused and intend to cause by their conduct.

## IX.   CAUSES OF ACTION

### COUNT ONE
### CONTRIBUTORY INFRINGEMENT OF COPYRIGHTS

49.     Bose realleges and incorporates by reference paragraphs 1 though 48, inclusive, of this Complaint as fully set forth here.

50.     Since creation, Bose has been, and still is, the sole owner of all right, title, and interest in and to the corresponding copyrights and Certificates of Registration.  Bose complied in all respects with the Copyright Act, 17 U.S.C. §101 *et seq.*, and with all other laws governing copyrights.   Bose received from the Register of Copyrights the original Certificates of Registration, dated October 2, 2000 for the authorship of photographs and text.  The Certificate of Registration is Vau 490-356.  Since October 2, 2000, Bose has been the sole proprietor of all rights, title, and interest in and to the copyright on its Worldwide Web Site.  17 U.S.C. § 106. Bose received another Certificates of Registration from the Register of Copyrights dated June 27, 2003 for the authorship of photographs and text.  The Certificate of Registration is Vau 588-885. Bose received another Certificates of Registration from the Register of Copyrights dated August 23, 2004, 2004 for the authorship of photographs and text related to Bose Corporation Launch CD for New Lifestyle DVD home entertainment & expansion products.   The Certificate of Registration is VA 1-265-156.

51.     As described above, a tremendous amount of copyright infringement has and is taking place on the Defendants' servers and by virtue of Defendants' services.   These infringements continue to occur everyday, whenever an Internet user accesses the Vertigo Online websites containing Bose's copyrighted text and images, all of which are posted without authorization of the copyright owner, constituting an unauthorized distribution and resulting in an unauthorized copy.  Each and every one of these infringements is facilitated, encouraged, and made possible by Defendants.  Because Defendants make Bose's images and text available for

unauthorized copying and distribution as they are all stored on Defendants' servers, Bose's copyrighted material would not be available for illicit copying at all were it not for Defendants.

52. Through its conduct averred herein, Defendants have engaged and continue to engage in the business of knowingly and systematically inducing, causing, and materially contributing to the above-described unauthorized reproductions and/or distributions of copies of Bose's copyrighted material and thus to the infringement of Bose's copyrights and exclusive rights under copyright in the copyrighted material.

53. The infringement of each of Bose's rights in and to the copyrighted material constitutes a separate and distinct act of infringement.

54. The foregoing acts of infringement by Defendants have been willful, intentional, and purposeful, in disregard of and indifference to the rights of Bose, including but not limited to displaying or causing to be displayed copyrighted material and images on the Internet from its servers without any authorization from Bose. Bose notified Defendants that they had infringed Bose's copyrights, but Defendants have continued to infringe the copyrights.

55. Defendants' conduct, as averred herein, constitutes contributory infringement of Bose's copyrights and Bose's exclusive rights under copyright in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 and 501.

56. As a direct and proximate result of the contributory infringements by Defendants of Bose's copyrights and exclusive rights under copyright, Bose is entitled to damages and Defendants' profits pursuant to 17 U.S.C. § 504(b) for each infringement.

57. Alternatively, Bose is entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

58. Further, Bose is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

59. Defendants' acts of copyright infringement have caused, are causing and, unless enjoined and restrained by this Court, will continue to cause Bose great and irreparable injury

that cannot fully be compensated or measured in money.  Bose has no adequate remedy at law for Defendants' wrongful conduct in that (i) Bose's copyright is unique and valuable property that has no readily determinable market value; (ii) the infringement by Defendants constitutes an interference with Bose's goodwill and customer relationships; and (iii) Defendants' wrongful conduct, and the damages resulting to Bose there from, is continuing.  Pursuant to 17 U.S.C. § 502, Bose is entitled to temporary, preliminary and permanent injunctions prohibiting further contributory infringements of its copyrights, and to an order under 17 U.S.C. § 503 that any infringing Bose photographs, text  or material be impounded and destroyed.

**COUNT TWO**
**VICARIOUS INFRINGEMENT OF COPYRIGHTS**

60.    Bose realleges and incorporates by reference paragraphs 1 though 59, inclusive, of this Complaint as fully set forth here.

61.    Since creation, Bose has been, and still is, the sole owner of all right, title, and interest in and to the corresponding copyrights and Certificates of Registration.  Bose complied in all respects with the Copyright Act, 17 U.S.C. §101 *et seq.*, and with all other laws governing copyrights.  Bose received from the Register of Copyrights the original Certificates of Registration, dated October 2, 2000 for the authorship of photographs and text.  The Certificate of Registration is Vau 490-356.  Since October 2, 2000, Bose has been the sole proprietor of all rights, title, and interest in and to the copyright on its Worldwide Web Site.  17 U.S.C. § 106. Bose received another Certificates of Registration from the Register of Copyrights dated June 27, 2003 for the authorship of photographs and text.  The Certificate of Registration is Vau 588-885. Bose received another Certificates of Registration from the Register of Copyrights dated August 23, 2004, 2004 for the authorship of photographs and text related to Bose Corporation Launch CD for New Lifestyle DVD home entertainment & expansion products.  The Certificate of Registration is VA 1-265-156.

62.    At all times relevant herein, Defendants had the right and ability to supervise and/or control the infringing conduct of Vertigo Online by, without limitation, removing the

infringing material from the websites or preventing, disabling or terminating access to its computer servers that contained the infringing material, but has failed to exercise such supervision and/or control. As a direct and proximate result of such failure, Vertigo Online has infringed Bose's copyrights in the text and pictures, as set forth above.

63.    At all times relevant herein, Defendants derived substantial financial benefit from infringements of Bose's copyrights by Vertigo Online in that, among other things, Defendants, Bose is informed and believes, receive a percentage of the sales made on the Vertigo Online websites that they host.  Bose is informed and believes, and on that basis avers, that the amount of these fees is related directly, in whole or in part, to the number of Internet users that purchase Bose products from Vertigo Online which, in turn, is dependent directly on Defendants' facilitation of and participation in the unauthorized reproduction and distribution of Bose's copyrighted material.

64.    The foregoing acts of infringement by Defendants have been willful, intentional, and purposeful, in disregard of and indifference to the rights of Bose, including but not limited to displaying or causing to be displayed copyrighted material and images on the Internet from its servers without any authorization from Bose.  Bose notified Defendants that they had infringed Bose's copyrights, but Defendants have continued to infringe the copyrights.

65.    Defendants' conduct, as averred herein, constitutes vicarious infringement of Bose's copyrights and exclusive rights under copyright, in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 and 501.

66.    As a direct and proximate result of Defendants' vicarious infringement of Bose's copyrights and exclusive rights under copyright, Bose is entitled to damages and Defendants' profits pursuant to 17 U.S.C. § 504(b) for each infringement.

67.    Alternatively, Bose is entitled to the maximum statutory damages in the amount of $150,000 with respect to each work infringed, or for such other amounts as may be proper under 17 U.S.C. § 504(c).

68.     Further, Bose is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

69.     Defendants' acts of copyright infringement have caused, are causing and, unless enjoined and restrained by this Court, will continue to cause Bose great and irreparable injury that cannot fully be compensated or measured in money.  Bose has suffered, and will continue to suffer, substantial and irreparable damage to its business reputation and goodwill.  Bose has no adequate remedy at law for Defendants' wrongful conduct in that (i) Bose's copyright is unique and valuable property that has no readily determinable market value; (ii) the infringement by Defendants constitutes an interference with Bose's goodwill and customer relationships; and (iii) Defendants' wrongful conduct, and the damages resulting to Bose there from, is continuing.  Pursuant to 17 U.S.C. § 502, Bose is entitled to temporary, preliminary and permanent injunctions prohibiting further vicarious infringements of its copyrights, and to an order under 17 U.S.C. § 503 that any infringing Bose photographs, text  or material be impounded and destroyed.

## COUNT THREE
## CONTRIBUTORY INFRINGEMENT OF TRADEMARKS

70.     Bose realleges and incorporates by reference paragraphs 1 though 69, inclusive, of this Complaint as fully set forth here.

71.     Defendants are liable for contributory infringement of Bose's trademarks through any use or reproduction of Bose's trademarks or a copy or colorable imitation thereof taking place on its servers via the Vertigo Online websites.  As set forth above, Defendants have facilitated and intentionally induced Vertigo Online to infringe Bose's trademarks and have continued to provide Vertigo Online with its web hosting services, despite the fact that it knew or had reason to know that Vertigo Online was engaging in massive trademark infringement.  As a result, Defendants are contributorially responsible for any harm done as a result of that deceit.

72.     Bose has marketed, advertised, and promoted Bose products under its trademarks, service marks, and logos, and as a result of this marketing, advertising and promotion, Bose

products and the BOSE® trademarks set forth above have come to mean and are understood to signify the products and marks of Bose and are the means by which the products and marks are distinguished from those of others in the same and in related fields.

73. Because of long, continuous, and exclusive use of the trademarks and service marks described in this complaint, the BOSE® trademarks have acquired a secondary meaning associated by customers, end users, and the public with Bose products.

74. Defendants have committed the acts alleged with previous knowledge of Bose's prior use and superior rights to the registered trademarks and with previous knowledge of the reputation of the BOSE® Marks in interstate commerce. Defendants' actions were undertaken for the willful and calculated purpose of trading upon Bose's goodwill and for the willful and calculated purpose of distributing and/or implying to consumers they would distribute Bose products based upon the goodwill of the BOSE® Marks and business reputation, so as to mislead and deceive customers and the public. Defendants' actions are likely to cause confusion and mistake among customers and the public as to the origin or association of the Bose products, all to Defendants' gain and Bose's damage.

75. The acts of Defendants, as set forth above, constitute use in interstate commerce of reproductions, counterfeits, copies, and/or colorable imitations of the BOSE® trademarks. Such activities are likely to cause confusion, mistake, or deception as to the source, origin, or approval of the infringing Bose products being offered and distributed by Vertigo Online, which can be accomplished only through the Defendants' actions, that bear any version of the registered trademarks and service marks described in this Complaint and others owned by Bose.

76. Further, the activities of Vertigo Online are intended to, and are likely to, lead the public to conclude, incorrectly, that the infringing use of the BOSE® trademarks described in this Complaint are or have been distributed, solicited for distribution, offered, advertised, and marketed by Vertigo Online and Defendants, originate with, are sponsored by, or are authorized by Bose, to the damage and harm of Bose, its authorized dealers, and the public.

77.    Defendants' activities as described herein constitute willful and deliberate infringement of the federally registered trademarks and service marks in violation of the Lanham Trademark Act, including, but not limited to, 15 U.S.C. § 1114(1).  Defendants, after actual notice by Bose, continued and continue to permit Vertigo Online access to its servers and services to infringe Bose's trademark rights, with actual knowledge of, or in reckless disregard of, Bose's rights in the marks.  Defendants have allowed Vertigo Online to continue its illegal pilfering and use of Bose's trademarks and in spite of Defendants' knowledge that the use of Bose's trademarks or a copy or a colorable imitation thereof, was and is in direct contravention of Bose's rights.

78.    As a direct and proximate result of Defendants' contributory infringement of Bose's trademarks and exclusive rights under trademark law, Bose is entitled to damages and Defendants' profits, and the cost of this action pursuant to 15 U.S.C. § 1117.  In addition, Bose is entitled to judgment for three times such damages together with reasonable attorney's fees.

79.    Defendants' acts of contributory trademark infringement have caused, are causing and, unless enjoined and restrained by this Court, will continue to cause Bose great and irreparable injury that cannot fully be compensated or measured in money.  Bose has suffered, and will continue to suffer, substantial and irreparable damage to its business reputation and goodwill.  Bose has no adequate remedy at law for Defendants' wrongful conduct in that (i) if Defendants' wrongful conduct continues, consumers are likely to become further confused as to the source of Bose products bearing any of the registered trademarks in this complaint; (ii) Bose's marks are unique and valuable property that have no readily determinable market value; (iii) the infringement by Defendants constitutes an interference with Bose's goodwill and customer relationships; and (iv) Defendants' wrongful conduct, and the damages resulting to Bose, is continuing.  Accordingly, Bose is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a), and to an order under 15 U.S.C. § 1116 subsections (a) and (d)(1)(A) and 28 U.S.C. § 1651, impounding all copies of Bose products being offered or distributed by Defendants that

bear any versions of the registered trademarks described in this Complaint, as well as all records documenting the distribution or receipt of Bose products.

## COUNT FOUR
## CONTRIBUTORY TRADEMARK DILUTION

80.     Bose realleges and incorporates by reference paragraphs 1 though 79, inclusive, of this Complaint as fully set forth here.

81.     The BOSE® trademarks are highly recognized and widely used in interstate commerce in the United States, as well as worldwide.  Among other things, (a) the marks have acquired a high degree of distinctiveness, (b) Bose has used the BOSE® trademarks beginning as early as 1964, well prior to Vertigo Online and Defendants' first use of the marks, and continuously for at least thirty-seven years throughout the United States in connection with Bose's products; (c) Bose has extensively advertised and publicized the marks for many years throughout the United States; (d) Bose has used the marks in a broad geographical trading area encompassing all of the states and territories of the United States, and abroad; and (e) the marks have an extremely high degree of recognition among the public, including on the Internet.

82.     The BOSE® trademarks are "famous" as defined by 15 U.S.C. § 1125(c), because of the mark's acquired distinctiveness in identifying Bose's development, promotion, advertising, and distribution of electroacoustical products, Bose's online and Internet related activities, its extensive worldwide use over the past thirty-seven years, and the widespread advertising and publicity the mark has received in national and international media.

83.     The acts of Defendants as described above are commercial uses in commerce that dilute and detract from the distinctiveness of the BOSE® trademarks and severely tarnish them, with consequent damage to Bose and the products and goodwill symbolized by these marks, in violation of the Federal Trademark Dilution Act of 1996, codified at 15 U.S.C. § 1125(c).  In addition, the acts of Defendants as described above demonstrate that Defendants willfully intended to trade on Bose's reputation.

84.     Defendants' activities as described herein constitute willful and deliberate dilution of the federally registered trademarks and service marks in violation of the Lanham Trademark Act, including, but not limited to, 15 U.S.C. § 1125. Defendants, after actual notice by Bose, continued and continue to permit Vertigo Online access to its servers and services to infringe Bose's trademark rights, with actual knowledge of, or in reckless disregard of, Bose's rights in the marks. Defendants have allowed Vertigo Online to continue its illegal pilfering and use of Bose's trademarks and in spite of Defendants' knowledge that the use of Bose's trademarks or a copy or a colorable imitation thereof, was and is in direct contravention of Bose's rights. As such, Defendants willfully and deliberately intended to trade on Bose's reputation and/or cause dilution of its famous marks.

85.     As a direct and proximate result of Defendants' contributory dilution of Bose's trademarks and exclusive rights under trademark law, Bose is entitled to damages and Defendants' profits, and the cost of this action pursuant to 15 U.S.C. § 1117. In addition, Bose is entitled to judgment for three times such damages together with reasonable attorney's fees.

86.     Defendants' acts of contributory trademark dilution have caused, are causing and, unless enjoined and restrained by this Court, will continue to cause Bose great and irreparable injury that cannot fully be compensated or measured in money. Bose has suffered, and will continue to suffer, substantial and irreparable damage to its business reputation and goodwill. Bose has no adequate remedy at law for Defendants' wrongful conduct in that (i) if Defendants' wrongful conduct continues, Defendants will cause the dilution of the distinctive quality of Bose's famous trademark and the lessening of the capacity of its famous marks to identify and distinguish Bose's goods or services; (ii) Bose's marks are unique and valuable property that have no readily determinable market value; (iii) the infringement by Defendants constitutes an interference with Bose's goodwill and customer relationships; and (iv) Defendants' wrongful conduct, and the damages resulting to Bose, is continuing. Accordingly, Bose is entitled to temporary, preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116(a).

## X. **PRAYER FOR RELIEF**

WHEREFORE, Bose prays:

A.     That this Court enter a judgment against Defendants on Count One of the Complaint, that Defendants committed contributory copyright infringement and that they willfully and intentionally infringed Bose's rights in the above federally registered copyrights under 17 U.S.C. §§ 106 and 501.

B.     That this Court enter a judgment against Defendants on Count Two of the Complaint, that Defendants committed vicarious copyright infringement and that they willfully and intentionally infringed Bose's rights in the above federally registered copyrights under 17 U.S.C. §§ 106 and 501.

C.     On Counts One and Two, for Defendants' profits and for damages in such amount as may be found; alternatively, for maximum statutory damages in the amount of $150,000 with respect to each copyrighted work infringed, or for such other amount as may be proper pursuant to 17 U.S.C. § 504(c) together with reasonable attorney's fees and costs of court.

D.     That this Court enter a judgment against Defendants on Count Three of the Complaint, that Defendants committed contributory trademark infringement and that they willfully and intentionally infringed Bose's rights in the above federally registered trademarks in violation of the Lanham Trademark Act, including, but not limited to, 15 U.S.C. § 1114(1);

E.     That this Court enter a judgment against Defendants on Count Four of the Complaint, that Defendants committed contributory trademark dilution and that they willfully and intentionally infringed Bose's rights in the above federally registered trademarks in violation of the Lanham Trademark Act, including, but not limited to, 15 U.S.C. § 1114(1);

F.     On Counts Three and Four, that Defendants be required to account to Bose for all profits and damages resulting from Defendants' infringing activities and dilution of Bose' marks, and that the Court enter judgment for three times such damages to Bose together with reasonable attorney's fees and costs of court;

G. That pursuant to federal law, the Court issue a temporary, preliminary and permanent injunction enjoining Defendants, and each of them, and their respective officers, directors, agents, representatives, servants, employees, attorneys, licensees, successors and assigns, and all others in active concert or participation with each or any of them, be enjoined and restrained, during the pendency of this action and permanently, from making any unauthorized use of, or engaging in, any unauthorized distribution of products protected by Bose's trademarks and copyrights;

H. That pursuant to federal law, the Court issue a temporary, preliminary and a permanent injunction enjoining Defendants, and each of them, and their respective officers, directors, agents, representatives, servants, employees, attorneys, licensees, successors and assigns, and all persons acting in concert or participation with each or any of them, from: (i) directly or indirectly infringing in any manner any of Bose's respective copyrights (whether now in existence or hereafter created), including without limitation, the copyrighted material set forth above; (ii) from causing, contributing to, enabling, facilitating, or participating in the infringement of any of Bose's respective copyrights, including without limitation, the copyrighted material set forth above on any of Defendants' servers, including but not limited to those servers hosing the www.vertigoonline.com, www.azizdirect.com, www.realdealonline.com, www.boseetc.com websites; and (iii) from causing, contributing to enabling, facilitating, or participating in the reproduction or distribution of any of Bose's respective copyrights, including without limitation, the copyrighted material set forth above on any of Defendants' servers, including but not limited to those servers hosing the www.vertigoonline.com, www.azizdirect.com, www.realdealonline.com, www.boseetc.com websites.

I. That this Court order Defendants, and each of them, to file and serve within thirty (30) days of the order, a written statement under oath setting forth, in detail, and certifying the manner in which Defendants have complied with the order and the injunction pursuant to 11 U.S.C. § 1116(a);

**PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT – Page 36**

J.      That the Court enjoin Defendants during the pendency of this action from distributing, offering for distribution, or the causing of the same any purported Bose products on any of Defendants' servers, including but not limited to those servers hosing the www.vertigoonline.com, www.azizdirect.com, www.realdealonline.com, www.boseetc.com websites;

K.      That the Court order that any infringing Bose product in Defendants' possession, custody, or control, together with all records documenting the acquisition, distribution, offering for distribution, circulation, sale, offering for sale, importation, advertisement, promotion, or display of infringing marks, or of products bearing such infringing marks, be impounded and, as appropriate, destroyed; and

L.      That Bose be awarded such other and further relief as the Court may deem just and equitable.

Dated:  September 3, 2004      Respectfully submitted,

**FISH & RICHARDSON P.C**.


By: _____
    Matthew E. Yarbrough
    Texas Bar No. 00789741
    ·Victor C. Johnson
    Texas Bar No. 24029640
    Kelly R. Vickers
    Texas Bar No. 24041827

    1717 Main Street, Suite 5000
    Dallas, TX  75201
    (214) 747-5070 (Telephone)
    (214) 747-2091 (Telecopy)


**Of Counsel:**

    Charles Hieken
    225 Franklin Street
    Boston, MA 02110-2804
    (617) 542-5070 (Telephone)
    (617) 542-8906 (Facsimile)

    **ATTORNEYS FOR PLAINTIFF**
    **BOSE CORPORATION**

## VERIFICATION

| COMMONWEALTH of Massachusetts | § |
| | § |
| COUNTY OF Middlesex | § |

BEFORE ME, the undersigned authority, personally appeared Katheryn A. Jackson, who, being duly sworn, stated that she is the Associate General Counsel for Bose Corporation and is the duly authorized agent for Bose Corporation in the above-captioned cause; that he has read the above and foregoing Original Verified Complaint; and that every factual statement contained therein are within either his personal knowledge, or within the corporate information of Bose Corporation or its agents to which he has had access by reason of his position as an employee of Bose Corporation, and is true and correct, unless such factual statements are said therein to be made on information and belief.

Katheryn A. Jackson,
Associate General Counsel